UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| | CASE NO.  09-15351-FJB |
| MARYANN MCLEOD CRUSH, | |
| | |
| Debtor. | |

SECOND MOTION OF DEBTOR FOR AUTHORITY
TO ENTER INTO SECURED LENDING TRANSACTION WITH X FIVE FUNDING, LLC [1]

Now comes the Debtor, Maryann McLeod Crush and says as follows:

1.      She is the Chapter 11 Debtor herein, having filed this case on June 9, 2009.  She is presently a Chapter 11 Debtor in possession.

2.      On October 28, 2010, she filed a Second Amended Disclosure Statement and a Second Amended Chapter 11 Plan.

3.      The Debtor is the owner of the following parcels of real estate located in South Boston, Suffolk County, Massachusetts:

CRUSH
REAL ESTATE CHART

| Address | Value | Mortgage Holder | Claim Amount |
|---|---|---|---|
| | | | |
| 948 East Broadway South Boston, MA | $2,000,000.00 | City of Boston | $49,252.05 |
| | | Mt. Washington Cooperative | $250,000.00 |
| | | Mt. Washington Cooperative | $415,000.00 |
| | | | |
| | | | |
| 567 E 6th Street South Boston, MA | $350,000.00 | Mt. Washington Bank | $735,000.00 |
| 427 East Sixth Street South Boston, MA | $650,000.00 | City of Boston | $53,108.42 |

---

[1]   The first Motion was subject to a Motion to Withdraw filed with the Court on February 24, 2011.

| | | Mt. Washington Bank | $735,000.00 |
|---|---|---|---|
| 917 East Broadway South Boston, MA | $750,000.00 | City of Boston | $67,283.88 |
| | | Mt. Washington Bank | $735,000.00 |
| 595 East Sixth Street South Boston, MA | $650,000.00 | Deutsche Bank Trust Company | $475,000.00 |
| 64 Edward Road Marshfield, MA | $275,000.00 | Bayview Mortgage | $225,000.00 |
| | | Town of Marshfield | $12,773.27 |
| Unit 192-4 192 West Seventh St. South Boston, MA | $75,000.00 | City of Boston | $2,375.65 |
| 314 K Street South Boston, MA | $650,000.00 | City of Boston | $39,113.61 |
| | | Mt. Washington Bank | $735,000.00 |
| 305 K Street South Boston, MA | $1,200,000.00 | City of Boston | $73,048.15 |
| | | Mt. Washington Bank | $735,000.00 |

The five parcels designated as security for Mt. Washington Bank with claim amount of $735,000.00 represent one debt of $735,000.00 secured by the five parcels.

All parcels are subject to judicial lien of American Express Centurion Bank in the sum of $94,634.21.

4.    The Debtor has filed her Second Amended Plan of Reorganization and Second Amended Disclosure Statement.  The Court had scheduled a hearing for confirmation of her Plan for February 8, 2011 at 11:30 A.M., which has been continued to April 26, 2011 at 2:00 P.M.

5.    The Plan provides for the Debtor to refinance these parcels of real estate.  In part, the proceeds of the refinance are going to be used to pay, in full, the allowed claims in her case.

6.    The Debtor has made arrangements with X Five Funding, LLC, a Massachusetts Limited Liability Company, for a loan in an amount not to exceed two million five hundred thousand dollars ($2,500,000.00).

7.      The loan is going to be secured by a first mortgage on the following properties;

      305 K Street, South Boston;

      917 East Broadway, South Boston;

      567 East Broadway, South Boston;

      427 East 6th Street, South Boston;

      314 K Street, South Boston;

      595 East 6th Street, South Boston.

8.      The loan will be secured by second mortgages on the following properties;

      948 East Broadway, South Boston; (this will actually be a third mortgage, as the property is subject to mortgages to Mount Washington Bank in the approximate amounts respectively, of $250,000.00 and $415,000.00 which the Debtor intends to retain in place and make payments as they fall due in the ordinary course of business)

      192 West 7th Street, South Boston - pledge of Debtor's partnership interest in Pleasure Bay Partnership which is the title holder of 815 E. 5th Street, South Boston and 21 Covington, South Boston.

9.      An amended term sheet was issued in September of 2010 and a copy thereof is attached hereto and made a part hereof as Exhibit "A".  This is amended preliminary term sheet and there may be adjustments in some of dates once the loan, if authorized, finally closes but the basic terms of the loan are incorporated in said term sheet.

10.     The purposes of the loan are for satisfying the claims of creditors of the Debtor in this Chapter 11 case and for the rehabilitation and development of 3 condominium units located at 427 E. 6th Street, South Boston and 3 condominium units located at 595 E. 6th Street, South Boston.  The amount allocated for these rehabilitation purposes from said loan toward 427 E. 6th Street, South Boston is $425,000.00.  There will be a separate allocation for rehabilitation purposes for 595 E 6th Street, South Boston.

11.   The terms of the loan are interest at the rate of 14% per anum compounded monthly and payable monthly on the first day of each month at an interest rate equal to 5% with the remaining interest rate of 9% accruing and compounding on a monthly basis and payable on the due date of the principal of the note.  The maturity date of the loan is February 25, 2013.

12.   The loan contemplates that it will be satisfied out of the net proceeds of the sale of the 6 condominium units.

13.   The loan further provides that upon approval by the Court, the Debtor will pay the sum of $75,000.00 which shall be set aside in an escrow account for the payment of legal fees and other due diligence costs in connection with the preparation and consummation of the loan.  In addition, the Debtor will, out of the proceeds of said loan, pay a commitment fee of 2%; $50,000.00.

14.   Although not stated in the term sheet, the loan proceeds will be disbursed by the lender.  Of those loan proceeds, the amounts to be used to satisfy the administrative expenses and allowed claims in the Chapter 11 Case will be disbursed to the Debtor's Successor Counsel, Gary W. Cruickshank who will serve as the general disbursing agent under the plan for the purpose of making disbursements to satisfy those claims.

15.   The Debtor submits that this loan is in the best interest of the Debtor, the Chapter 11 Bankruptcy Estate and its creditors.  The loan will permit the creditors to be paid in full in conjunction with the confirmation of her Chapter 11 Plan.  It will preserve the assets for the benefit of the Debtor and permit her to develop six condominium units and, in so doing, permit her to retain title to the other properties for future development or sale.

WHEREFORE, the Debtor, Maryann McLeod Crush respectfully requests that this Honorable Court ;

1.   Authorize her to enter into the loan transaction with X Five Funding, LLC;

2.    Schedule a hearing in connection with the allowance of this motion on an expedited

basis;

3.    Enter a further Order that Gary W. Cruickshank, Esquire, Debtor's successor counsel,

shall serve as disbursing agent with regard to those proceeds of the loan which are

dedicated to satisfying the various commitments of the Debtor in Chapter 11 Plan;

4.    Enter an Order for such other and further relief as is meet and proper and as justice may

require.


MaryAnn McLeod Crush
By her Successor Counsel


Dated: March 14, 2011                    /s/Gary W. Cruickshank, Esq.
21 Custom House Street
Suite 920
Boston, MA 02110
(617) 330-1960
(BBO107600)
gwc@cruickshank-law.com

CERTIFICATE OF SERVICE

I, Gary W. Cruickshank, do hereby certify that on March 14, 2011 served the within SECOND MOTION OF DEBTOR FOR AUTHORITY TO ENTER INTO SECURED LENDING TRANSACTION WITH X FIVE FUNDING, LLC upon the interested parties in the following manner:

E-Mail Service:  via the Court's CM/ECF system which sent notification of such filing to the following:

- Amy N Azza     aazza@orlansmoran.com
- Eric K. Bradford     Eric.K.Bradford@USDOJ.gov
- Stefan E. Cencarik     sec@boston-legal.com, dbg@boston-legal.com;notices@boston-legal.com
- John Fitzgerald     USTPRegion01.BO.ECF@USDOJ.GOV
- Jonathon D. Friedmann     jfriedmann@rflawyers.com, jfriedmann@RFLawyers.com
- Joseph G. LaRusso     joseph.larusso@cityofboston.gov
- David A. Marsocci     dmarsocci@dolanconnly.com
- John M. McAuliffe     mcauliffeassociates@hotmail.com
- Paul J. Mulligan     bankruptcy@orlansmoran.com
- Stephen G. Murphy     murphys@dor.state.ma.us
- Daniel P. Ryan     daniel.p.ryan@irscounsel.treas.gov, &Bankruptcy.Boston@irscounsel.treas.gov

Mail Service:  via Regular, first-class United States mail, postage fully pre-paid, addressed to:

580 East Second Street Realty Trust
c/o McAuliffe & Associates, P.C.
430 Lexington Street
Newton, MA  02466

Bayview Mortgage Co., Inc.
P.O. Box 557
Hull, MA  02045

City of Boston Treasury Department
Bankruptcy Coordinator
City Hall Room M-5
One City Hall Square
Boston, MA  02201

DanversBank
One Conant Street
Danvers, MA  01923

Internal Revenue Service/IRS

Daniel P. Ryan
Special Assistant United States Attorney
10 Causeway Street
Room 401
Boston, MA  02222

MCM Properties, Inc.
Attn: Maryann McLeod Crush, President
917 East Broadway
South Boston, MA  02127

Mt. Washington Cooperative Bank
Dolan Connly, P.C.
50 Redfield Street, Suite 202
Boston, MA  02122

Ocwen Loan Servicing, LLC
Attn: Cashering Department
PO Box 24781
West Palm Beach, FL  33416-4781

Pleasure Bay LLC
C/O Jonathon Friedmann, Esq
92 State Street
Boston, Ma  02109

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL  33131

Saxon Mortgage Services, Inc.
1270 Northland Drive
Suite 200
Mendota Heights, MN  55120

580 East Second Street Realty Trust
430 Lexington STreet
Auburndale, MA 02466

American Express
c/o Jaffe & Asher LLP
600 Third Ave.
New York, NY 10015

American Express
c/o Smith Levenson Cullen & Alwyard PC
5 Essex Green Dr.
Peabody, MA 01960

American Express Centurion Bank
POB 3001
Malvern, PA 19355-0701

Bank of America/MBNA
c/o NCO Financial Systems
P.O.Box 17080
Wilmington, DE 19850

Bayview Mortgage
c/o Baldassini & Baldassini
59 Winter St.
Weymouth, MA 02188

Boston Water & Sewer
980 Harrison Ave.
Boston, MA 02119

Change Academy
130 Calo Lane
Lake Ozark, MO 65049

City of Boston
Attention: Real Estate Taxes
Boston City Hall
One City Square
Boston, MA 02201

City of Boston Treasury Department
City Hall Room M-5
One City Hall Square
Boston, MA 02201-1020

DISCOVER BANK
DFS Services LLC
PO Box 3025
New Albany, Ohio 43054-3025

Danversbank
One Conant St.
Danvers, MA 01923

Danversbank
c/o Howard M. Snyder, Esq.
Skulley & Snyder
4 Avon St., Box 542
Wakefield, MA 01880

Deutsche Bank National Trust Company, as Trustee f

2006-HE8 by Saxon Mortgage Services, Inc
4708 Mercantile Dr
Fort Worth, TX, 76137

Deutsche Bank Trust Company
c/o Orlans Moran
P.O. Box 962169
Boston, MA 02196

Discover
P.O. Box 6103
Carol Stream, IL 60197

Ed Donahue, CPA
Donahue & Associates
209 Concord Ave.
Cambridge, MA 02138

HSBC Bank Nevada
c/o Howard Lee Schiff P.C.
510 Tolland St.
P.O. Box 280245
East Hartford, CT 06108

HSBC Bank, N.A.
PO Box 5213
Carol Stream, IL 60197

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Jonathan Crush
20 Wabanaki Rd.
Andover, MA 01810

LVNV Funding f/k/n/a Resurgent Capital
RE: Sears
c/o Financial Recovery Services
P.O. Box 385908
Minneapolis, MN 55438

Marjorie L. Schaffel
Custance P1.
76 Bedford St., Ste. 26
Lexington, MA 02420

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114

Mt. Washington Bank
455 West Broadway
Boston, MA 02127

Mt. Washington Bank
c/o David Marsocci, Esq.
Dolan Connly, P.C.
50 Redfield St., Ste. 202
Boston, MA 02122

NStar
P.O. Box 4508
Woburn, MA 01888

Nancy E. Myerson LICSW
204 Lancaster St.
Brookline, MA 02446

National Grid
P.O. Box 4300
Woburn, MA 01888

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Saxon
P.O. Box 161489
Fort Worth, TX 76161

Saxon Mortgage Services, Inc.
1270 Northland Drive
Suite 200
Mendota Heights, MN, 55120

Tufts Medical Center
c/o Carter Business Service, Inc..
12 Teal Rd.
Wakefield, MA 01880

Edward Donahue, CPA
Edward C. Donahue and Associates
299 Concord Ave
Cambridge, MA  02138

Glen Hannington
141 Tremont Street
Boston, MA  02111

Lisa S. Weisman
Adelson Loria & Weisman PC
20 Park Plaza
Boston, MA  02116

Maryann McLeod Crush
948 East Broadway
South Boston, MA  02127

Sharon Crush
20 Wabanaki Way
Andover, MA  01810

/s/  Gary W. Cruickshank, Esq.

# EXHIBIT A

**Exhibit A**

**List of Properties on which Lender will have a First Mortgage Lien**

305 K Street, South Boston
917 East Broadway, South Boston
567 East Sixth, South Boston
427 East Sixth, South Boston
314 K Street, South Boston
595 East Sixth, South Boston

Exhibit A A1.docx

**Exhibit A-1**

**<u>List of Properties on which Lender will have
a Second Mortgage Lien or Second Priority Lien</u>**

948 East Broadway, South Boston (first mortgage loan may not exceed $750,000.00)
192 West Seventh, South Boston
815 East Fifth, South Boston (Pleasure Bay partnership) (Lender will have 1st priority pledge of Borrower's
partnership interests)
21 Covington, South Boston (Pleasure Bay partnership) (Lender will have 1st priority pledge of Borrower's
partnership interests)

Exhibit A  A1.docx

## X FIVE FUNDING, LLC

### PRELIMINARY TERM SHEET

The following is a summary of the general terms and conditions upon which X Five Funding, LLC, a Massachusetts limited liability company ("Lender"), would consider providing debt financing ("Loan") to Mary Ann Crush [and affiliated entities formed, controlled and owned, directly or indirectly, by Maryann McLeod Crush] ([collectively,] the "Borrower") for the financing of the Project (as defined below), all as more fully described in this Preliminary Term Sheet. Except as described in the section captioned "Binding Agreements" below, which sets forth certain binding obligations of the parties hereto, this Preliminary Term Sheet is not in any way intended to constitute an agreement between Lender and the Borrower or Mary Ann Crush in her capacity as the Guarantor and Principal [(or any entity affiliate of the Borrower or the Guarantor)] with respect to any matter, nor are the terms hereof to be construed by either party as comprising legally binding agreements, obligations or responsibilities enforceable against either party in any respect, but is only an expression of current interest to further pursue a debt financing transaction on the terms set forth herein. *All commitments by Lender are subject to review and approval by its investment committee. In addition, this Preliminary Term Sheet is subject to the review and prior written approval of The United States Bankruptcy Court for the District of Massachusetts in connection with Case Number 09-15351 filed on July 1, 2009.* This Preliminary Term Sheet is based upon the financials and other materials presented to Lender by the Borrower, and is subject to a more detailed due diligence and statement of terms, and to negotiation of, and agreement on, formal, definitive loan documents. This Preliminary Term Sheet shall automatically be deemed withdrawn and of no effect unless countersigned by the Borrower and the Guarantor in the space provided below prior to the close of business on *March 3, 2011.*

Lender is proposing to provide first mortgage and second mortgage debt financing to Borrower on the following terms and conditions:

1. Lender:                                   X Five Funding, LLC, a Massachusetts limited liability company

2. Borrower:                              Maryann McLeod Crush[and affiliated entities formed, controlled and owned, directly or indirectly, by Mary Ann Crush]

3. Project:                                 Financing certain costs in connection with the properties described on Exhibit A and Exhibit A-1 attached hereto and funding of certain construction costs in connection with the proposed condominium conversion of the properties located at 427 East Sixth Street, South Boston, MA ("427 East Sixth Street") and 595 East Sixth Street, South Boston, MA ("595 East Sixth Street") into an aggregate of six (6) condominium units, three (3) units at each property (the "Units") to be sold and not rented (the "Project").

4. Principal Amount of Loan:       The principal amount of the Loan shall be *sufficient to pay all creditors in full but shall not exceed Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00),* fully funded at closing. It is anticipated that the entire amount of the Loan will be funded in a single disbursement at the time of the loan closing and, to the extent not immediately required for Project costs, shall be held in a segregated interest-bearing account (the "Project Funds Account") at a financial institution and in investments reasonably acceptable to Lender, with all interest earned on such account reported as income of Borrower.

5. Use of Proceeds:                   The proceeds of the Loan shall be used as set forth on the schedule of Sources and Uses attached hereto as Exhibit B and incorporated herein. The Loan amount shall be reduced dollar for dollar to the extent there are any reductions Borrower is able to negotiate with any of Borrower's creditors on Exhibit B.

6. <u>Collateral</u>

The Loan shall be secured by a first priority perfected mortgage lien on the properties and all improvements thereon and set forth on <u>Exhibit A</u> attached hereto and incorporated herein (the "<u>First Lien Properties</u>") and a second priority lien in either the form of a second priority perfected mortgage lien on the properties and all improvements thereon and set forth on <u>Exhibit A-1</u> or a pledge of all of the equity in the applicable property owner of the properties set forth on <u>Exhibit A-1</u> attached hereto and incorporated herein (the "<u>Second Lien Properties</u>"), a perfected first priority security interest in the Project Funds Account, and an assignment of all contracts relating to the Project. The First Lien Properties, the Second Lien Properties and all improvement thereon and set forth on <u>Exhibit A</u> and <u>Exhibit A-1</u> are hereinafter referred to as the "Properties." The documents evidencing and perfecting such security must be acceptable to Lender. Lender will release Units *or Properties* from the lien of the mortgage upon sale at pre-approved release prices.

7. <u>Payment Guaranty:</u>

The Loan will be fully recourse to the Borrower and will be supported by a full payment guaranty from the Guarantor (the "<u>Guaranty</u>").

8. <u>Guarantor:</u>

The personal financial statements of Guarantor must be acceptable to Lender.

9. <u>Application of Net Sales Proceeds:</u>

(a) All net proceeds from the sale of the 1st and 2nd Units at 427 East Sixth (after reduction for payment of brokerage commissions and Borrower's reasonable closing costs and expenses which have been approved by Lender), will be applied in the following priority:

1.  Release fee due to Lender as described in section 15 hereof; and

2.  Accrued and unpaid interest and principal on the Loan until fully repaid.

(b) All net proceeds from the sale of the 3rd Unit at 427 East Sixth (after reduction for payment of brokerage commissions, and Borrower's reasonable closing costs and expenses which have been approved by Lender), shall be deposited into the Project Funds Account and shall be used to pay approved costs associated with the condominium conversion of 595 East Sixth Street in accordance with the Approved Project Plan and Budget.

(c) All net proceeds from the sale of the 595 East Sixth Street Units (after reduction for payment of brokerage commissions and Borrower's reasonable closing costs and expenses which have been approved by Lender), will be applied in the following priority:

1.  Release fee due to Lender as described in section 15 hereof; and

2.  Accrued and unpaid interest and principal on the Loan until fully repaid.

10. <u>Maturity Date:</u>

*June 14, 2013.*

2

| | |
|---|---|
| 11.  <u>Interest</u>: | Fourteen percent (14%) per annum, compounded monthly ("<u>Interest Rate</u>") and payable monthly on the first day of each month at an interest rate equal to five percent (5%), with the remaining interest rate equal to nine percent (9%) accruing and compounding on a monthly basis and payable on the due date of the principal of this Note, whether at maturity, upon acceleration or prepayment or otherwise.  Upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a rate equal to the sum of *(x)* the current Interest Rate plus *(y)* six percent (6%).  If any sum payable under the promissory note evidencing the Loan is not paid within five (5) days after the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to ten percent (10%) of the unpaid sum. |
| 12.  <u>Required Principal Payments</u>: | None prior to the Maturity Date except as provided in the section captioned "Application of Net Sales Proceeds."  The remaining outstanding principal balance and any accrued and unpaid interest shall be due on the Maturity Date. |
| 13.  <u>Prepayments</u>: | No repayments of the Loan may be made prior to the Maturity Date, except for repayments in connection with the sale of Units at or above release prices approved by Lender in accordance with Section *6* hereof which proceeds shall be used to pay the Exit Fee to Lender with the balance of any such proceeds to be used at Lender's discretion either to pay down the Loan or be deposited into the Project Funds Account to fund additional construction costs of the Project. |
| | Except for such permitted prepayments, if the Loan is prepaid prior to the Maturity Date for any reason including, without limitation, if the Loan is accelerated following default, such prepayment shall be accompanied by a prepayment premium so that Lender receives the same dollar return on such prepaid amount as it would have received if such prepaid amount had remained outstanding and earning interest at the Interest Rate for twenty-four (24) months, without any offset or credit for hypothetical returns on alternative investments. |
| 14.  <u>Fees to Borrower and its Affiliates</u>: | Except as expressly disclosed in operating or capital budgets for the Project approved by Lender, no leasing, management, development, construction management, disposition or other fees or other amounts shall be paid to the Borrower, Guarantor or any of their affiliates without the consent of Lender. |
| 15.  <u>Fees to Lender</u>: | The Borrower shall owe Lender a commitment fee in the amount of $50,000.00 upon closing and funding of the Loan.  Such fee may be paid by Borrower from Loan proceeds.  The Borrower shall pay Lender a release fee of 2% of the amount of the *net* sales proceeds *(after reduction for payment of brokerage commissions and Borrower's reasonable closing costs and expenses which have been approved by Lender)* in connection with the sale of each Unit *used to repay the loan*.  In addition, the Borrower shall pay Lender a fee in the amount of two percent (2%) of the amount of the Loan outstanding upon maturity or acceleration. |
| 16.  <u>Construction Monitoring</u>: | Lender will retain one or more engineers or other construction professionals to review plans and specifications, construction contracts, permitting and construction progress and other matters related to the development of the Project.  The cost of such professionals will be paid by the Borrower as a Project cost. |
| 17.  <u>Permitting; Budgets and Approvals</u> | The Borrower shall instruct its counsel to promptly review with Lender's counsel the current status of the permitting for the Project and, if requested, provide a written report with respect to such permitting, updated from time to |

<div align="center">3</div>

time as requested by Lender. All permits required for the development and sale of the Project shall be obtained prior to the closing of the Loan other than the actual pulling of building permits.

The Borrower shall submit to Lender for its approval a detailed construction plan and budget for the Project including, without limitation, Project timeline, condominium documents, detailed construction plans and specifications, a marketing and sales plan, minimum sales prices for each Unit and anticipated sales schedule (when approved by Lender, the "Approved Project Plan and Budget"). Any deviation from the Approved Project Plan and Budget will require Lender's approval. Lender's approval shall also be required for (i) all material contracts relating to the Project including, without limitation, design and construction contracts and any amendments thereto or material waivers thereunder, (ii) any agreement with any affiliate of the Borrower (including any member of the Borrower or any affiliate of a member) including, without limitation, with respect to the payment of any fees, (iii) any brokerage agreement for the sale of units, and (iv) any other matters that may have a material impact on the Project or the ability of the Borrower or Guarantor to repay or perform its obligations under the Loan. No subordinate or unsecured borrowing by Borrower will be allowed under the loan documents. The Borrower shall prepare and provide to Lender monthly construction reports, quarterly marketing reports, annual reviewed financial statements and such other reports as Lender shall reasonably request. Funds from the Project Funds Account shall be advanced to pay costs and expenses in accordance with the Approved Project Plan and Budget pursuant to a customary construction draw process.

18. Condominium Unit Sales and Financing:

The Borrower shall not be permitted to rent the Units and shall cause the Units to be sold for the maximum price then prevailing in the market, and not less than the minimum release price approved by Lender. Unless otherwise approved by Lender, no Unit shall be sold to any affiliate of the Borrower (including the Guarantor or Principals) or any other direct or indirect owner of any interest in Borrower, any member of Borrower or any affiliate thereof, or any family member of any member) except on arms-length terms pursuant to agreements reasonably approved by Lender.

Within ten (10) days of the end of each quarter, Borrower will provide Lender with an updated list and copies of all condominium unit purchase agreements, together with evidence that all such purchasers have pre-qualified for financing or have available cash resources to purchase the applicable condominium units.

19. Financial Reporting:

Borrower shall be required to provide annual certified income and expense statements for the Borrower and quarterly certified income and expenses statements for each of the Properties which shall include current rent rolls for the rental properties; quarterly updates on construction progress at 427 East Sixth Street, South Boston, MA and 595 East Sixth Street, South Boston, MA; and annually, copies of federal and state income tax returns.

20. Real Estate Taxes:

Borrower shall be required to deposit into a reserve account controlled by Lender (the "Tax Escrow Account") on the first day of each month an amount equal to one-twelfth (1/12) of the real estate taxes for the First Lien Properties that Lender estimates will be payable during the next ensuing twelve (12) months. Provided amounts in the Tax Escrow Account are sufficient to pay the real estate taxes then due and no Event of Default exists, Lender shall pay the real estate taxes as they become due on their respective due dates on behalf of Borrower by applying the funds held in the Tax Escrow Account to the

4

payments of real estate taxes then due.

21. <u>Involvement of Principal:</u>    Mary Ann Crush (the "<u>Principal</u>") shall devote such time as is reasonably required to ensure successful completion of the Project. It shall be a default under the Loan entitling Lender to accelerate the Loan if at any time the Principal ceases to control the [*insert names of any entity borrowers*] and be actively involved in managing the business of the [*entity borrowers*] other than as a result of death or incapacity of such Principal.

22. <u>Transfer of Interests:</u>    Mary Ann Crush Guarantor shall not directly or indirectly sell, encumber or otherwise transfer their interests in any entities that comprise the Borrower without Lender's prior written consent. In any event, Lender shall at all times have a perfected first priority pledge of all ownership interests in such entities that comprise the Borrower.

23. <u>Events of Default:</u>    Events of Default shall include, without limitation, Borrower permitting any junior liens to be established; Borrower's failure to pay current interest when due, Borrower's failure to pay real estate and other taxes when due, Borrower's failure to pay condominium fees when due, and Borrower's failure to pay municipal and utility charges when due.

24. <u>Closing Date:</u>    The Loan would be closed within twenty-one (21) business days of Borrower receiving prior written unappeable approval of this Preliminary Term Sheet from The United States Bankruptcy Court for the District of Massachusetts in connection with Case Number 09-15351 filed on July 1, 2009 but in any event no later than *June 15, 2011*.

25. <u>Conditions to Closing:</u>    The closing of the proposed transaction described in this Preliminary Term Sheet would be conditioned upon contingencies, including, but not limited to:

(a)    <u>Due Diligence</u>. Completion and approval by Lender, in its sole and absolute discretion, of its customary due diligence with respect to the Borrower, Guarantor, and their respective assets, including, without limitation, confirmation of the title to the Properties, viability of the Project and that all necessary permits and approvals for the construction and operation of the Project have been obtained or can be obtained as a matter of course, approval of a detailed construction budget for the Project and completion timeline, current financial statements and federal and tax returns of the Borrower and Guarantor, review of the construction contract and all legal, engineering and environmental matters which Lender elects to undertake.

(b)    <u>Internal Approval</u>. Final approval by Lender's investment committee.

(c)    <u>Satisfaction of Tax and Other Liens</u>. From the Loan proceeds at closing, Borrower shall pay in full and satisfy all liens outstanding against the Properties, including, without limitation, all outstanding real estate tax liens, utility and municipal liens, and liens for condominium assessments and the like and shall provide Lender with satisfactory evidence of all such payments.

(d)    <u>Finalization of Definitive Documentation</u>: Negotiation, execution and delivery by all necessary parties of the loan documents evidencing

5

the Loan and all other transaction documents. The loan documents shall be satisfactory to Lender in its sole discretion and shall contain representations and covenants appropriate for this type of financing. Borrower's counsel would be required to deliver to Lender such opinions (in form satisfactory to Lender) as are customary for transactions of this nature.

(e) _Approval of Plan._ Review and approval by Lender in its sole and absolute discretion of the plan to be submitted by Borrower for confirmation by The United States Bankruptcy Court for the District of Massachusetts in connection with Case Number 09-15351 filed on July 1, 2009.

(f) _Bankruptcy Court Approval._ Final unappealable prior written approval of this Preliminary Term Sheet and plan confirmation by The United States Bankruptcy Court for the District of Massachusetts in connection with Case Number 09-15351 filed on July 1, 2009.

26. _Binding Agreements:_     Notwithstanding anything to the contrary, it is intended by the parties that the following provisions shall be binding upon the Borrower, Guarantor, Principals, and their respective affiliates and are intended to induce Lender to commit the time and expense to consider the viability of the transaction contemplated hereunder, undertake its due diligence review, and prepare and negotiate the transaction documents:

(a)     _Exclusivity._ Upon execution of this Preliminary Term Sheet by the parties hereto, the Borrower, Guarantor, and Principal shall cease discussions with and neither negotiate with nor enter into any agreement with any other party for the provision of financing for the purposes contemplated in this Preliminary Term Sheet other than the Senior Loan contemplated in this Preliminary Term Sheet while Lender and the Borrower and Guarantor negotiate loan documents for the Loan and Lender conducts its underwriting and diligence investigations.

(b)     _Lender's Expenses._ By executing this Preliminary Term Sheet, the Borrower and Guarantor agree that Borrower will pay one hundred percent (100%) of all reasonable third party out-of-pocket expenses incurred by Lender in connection with the Loan contemplated in this Preliminary Term Sheet. Such third party out-of-pocket expenses include, without limitation, diligence expenses and attorneys' fees, whether or not the Loan closes, including any failure to close as a result of Lender's investment committee not approving a financing consistent with this Preliminary Term Sheet or the failure of Lender's fund to close in accordance with paragraph 25. An initial deposit in the amount of $75,000.00 ("Earnest Money Deposit") will be required from the Borrower upon written approval of this Preliminary Term Sheet from The United States Bankruptcy Court for the District of Massachusetts, which Earnest Money Deposit will be used by the Lender to fund such expenses.

(c)     _Confidentiality._ The terms and conditions of this Preliminary Term Sheet and the transaction described herein, including the identity of the parties, shall be held by the parties in confidence and shall not be disclosed to any person or entity. Without limiting the foregoing, neither the Borrower, Guarantor, any of the Principals, nor their respective agents or representatives, shall issue any news releases, advertise the Project, or make any other public

6

disclosure with respect to the transaction without the prior consent of Lender. Notwithstanding the foregoing, Lender shall have the right to advertise its financing of the Project, including, without limitation, placement of signage at the Project. Each of the parties hereto will be furnishing to each other certain information, which is either non-public, confidential or proprietary in nature. Each of the parties agrees that all such information furnished or otherwise obtained, directly or indirectly, by such party, its directors, officers, partners, employees, agents or representatives including, without limitation, attorneys, accountants, partners, experts and consultants (collectively, "Representatives") and all reports, analysis, compilations, data, studies or other documents prepared by such party or its Representatives containing or based, in whole or in part, on any such furnished information (collectively, the "Information") will be kept strictly confidential and will not, without the prior written consent of the other party, be disclosed to any other individual, corporation, company, joint venture, trust or association in any manner whatsoever, in whole or in part and will not be used for any purpose other than evaluating the transaction described herein, provided that if either party receives an opinion of counsel that it is legally obligated to release the Information, such party may do so after notice to and consultation with the other party.

      (d)    Brokerage Commissions. The parties represent and warrant to each other that no brokers, consultants or investment bankers are involved in this transaction, and shall indemnify each other and hold each harmless from any liability for any brokerage commission, finder's fee or similar fee which may be asserted by any real estate broker or other party.

      (e)    Representations and Warranties. The Borrower and the Guarantor hereby jointly and severally warrant and represent to Lender that neither the execution of his Preliminary Term Sheet nor the consummation of the transactions contemplated herein shall (a) result in any breach or violation of any contract, agreement, covenant or understanding to which they or any of their affiliates are a party or by which they or any of their affiliates are otherwise bound; or (b) result in any violation of any statute, regulation, ordinance, judgment or other law to which they are subject or by which they are bound.

27. Governing Law:          The Loan shall be governed by the laws of the Commonwealth of Massachusetts.

<div align="center">REMAINDER OF PAGE INTENTIONALLY BLANK</div>

<div align="center">7</div>

0000054/8

EXECUTED as of February 24, 2011.

<div style="margin-left:40%">

Lender:

X Five Funding, LLC,
a Massachusetts limited liability company

By: _____
Name:    Gerald M. Curtin
Title:    Manager

</div>

The undersigned hereby agree to the foregoing terms and conditions, and shall be jointly and severally and, as applicable, personally obligated under the binding provisions hereof.

<div style="margin-left:40%">

Borrower:

_____
Maryann McLeod Crush, individually

Guarantor:

_____
Maryann McLeod Crush, individually

</div>

8

0000054/8

EXECUTED as of February 24, 2011.

Lender:

X Five Funding, LLC,
a Massachusetts limited liability company

By:      _____
Name:   Gerald M. Curtin
Title:   Manager

The undersigned hereby agree to the foregoing terms and conditions, and shall be jointly and severally and, as applicable, personally obligated under the binding provisions hereof.

Borrower:

_____
Maryann McLeod Crush, individually

Guarantor:

_____
Maryann McLeod Crush, individually

8

0000054/8

**Exhibit A**

<u>List of Properties on which Lender will have a First Mortgage Lien</u>

305 K Street, South Boston
917 East Broadway, South Boston
567 East Broadway, South Boston
427 East Sixth, South Boston
314 K Street, South Boston
595 East Sixth, South Boston

9

**Exhibit A-1**

<u>List of Properties on which Lender will have
a Second Mortgage Lien or Second Priority Lien</u>

948 East Broadway, South Boston (first mortgage loan may not exceed $750,000.00)
192 West Seventh, South Boston
815 East Fifth, South Boston (Pleasure Bay partnership) (Lender will have 1st priority pledge of Borrower's
partnership interests)
21 Covington, South Boston (Pleasure Bay partnership) (Lender will have 1st priority pledge of Borrower's
partnership interests)

0000054/8

**Exhibit B**

**Schedule of Sources and Uses**
*Estimate*

X Five Lending - Crush Portfolio
Sources & Uses
February 24, 2011

| Souces & Uses - X Five Funding | | |
|---|---|---|
| Sources | | |
| X Five Funding | | |
| X Five Funding Loan | | $2,390,119 |
| Total Sources | | $2,390,119 |
| Uses | | |
| Crush Portfolio | | |
| Creditor | Related Property | |
| City of Boston | 917 E Broadway | $67,284 |
| City of Boston | 427 E Sixth Street | 53,108 |
| City of Boston | 305 K Street | 73,048 |
| City of Boston | 314 K Street | 39,114 |
| City of Boston | 567 E Sixth Street | 2,294 |
| City of Boston | 948 E Broadway | 49,252 |
| City of Boston | Unit 192 -4 W Seventh Street | 2,376 |
| Town of Marshfield | Judicial Lien | 12,773 |
| Deutsche Bank | 595 E Sixth Street | 475,000 |
| Mt Washington | 567 E Sixth Street | 735,000 |
| American Express | Judicial Lien | 94,634 |
| American Express | Revolving Credit | 14,341 |
| Bank of America | Revolving Credit | 6,834 |
| Change Academy | Medical Service | 92,000 |
| Discover | Revolving Credit | 6,159 |
| Ed Donahue, CPA | Accounting Service | 2,285 |
| HSBC Bank | Revolving Credit | 1,767 |
| Jonathan Crush | Personal Loan | 80,000 |
| LVNV Funding | Revolving Credit | 608 |
| Marjorie Schaffel | Medical Service | 1,683 |
| Nancy Myerson LICSW | Medical Service | 1,348 |
| National Grid | 305 K Street | 11,845 |
| National Grid | 948 E Broadway | 13,769 |
| Nstar | Utility | 3,000 |
| Tufts Medical Center | Medical Service | 596 |
| Commitment Fee (2%) | | 50,000 |
| Construction Escrow Funding | | 425,000 |
| Legal Fees/Due Diligence | | 75,000 |
| Total Uses | | $2,390,119 |

| Crush Liabilities Not Covered By X Five Funding | | |
|---|---|---|
| Creditor | Related Property | |
| Bayview Mortgage | 64 Edward Road | $225,000 |
| Mt Washington | 948 E Broadway | 250,000 |
| Mt Washington | 948 E Broadway | 415,000 |
| Total | | $890,000 |

11

0000054/8